E: T. BLUM, Ex'r., *v.* ISAAC W. ELLIS.

The Bankrupt law does not divest a lien; but as [all the property of a bankrupt, as well that subject to mortgages and liens, as that which is unencumbered, passed to the assignee and is in *custodia legis,* subject to priorities and liens, it follows that the Bankrupt Court is the proper tribunal in which to administer the remedies for the enforcement of liens.

All claimants against the estate of a bankrupt, are required to prove their debts, however evidenced.

MOTION for leave to issue execution, heard before *Cloud, J.,* at Spring Term, 1875, FORSYTHE Superior Court.

At May Term, 1870, of Forsythe Superior Court, the plaintiff's testatrix, Miss M. N. Transon, obtained a judgment for $761.75 and cost against the defendants, Isaac W. Ellis and Holden Smith, on their promissory note, executed to the testatrix of the plaintiff, as sureties for one S. E. Smith.

A transcript of this judgment was sent to the Clerk of the Superior Court of Davie county, on the 12th day of August, 1871, and made a judgment roll of that Court, the defendants residing and holding real estate in that county. Both of the defendants at that time had their homesteads laid off, which covered their real estate.

The testatrix of the defendant died on the 7th day of May, 1872. On the 30th day of May of that year, the plaintiff qualified as her executor ; and on the 23d day of April, 1873, he was made a party plaintiff to said judgment on the docket in Forsythe county, but not on the judgment roll of the court docket in the county of Davie. Since August, 1870, no execution has issued on said judgment.

At May Term, 1874, of Forsythe Superior Court, the plaintiff moved for leave to issue an execution against the defendant, Isaac W. Ellis, upon notice duly served upon him, returnable to that term, the defendant Holden Smith having prior thereto obtained his certificate of discharge from his debts in the Bankrupt Court.

It also appeared that Isaac W. Ellis, on the 30th of June, 1873, obtained his discharge from the Bankrupt Court, and that the reversionary interest in the real estate owned by him in the county of Davie, at the date of the judgment aforesaid, was re-conveyed to him by his assignee in Bankruptcy, no creditors having proved their claims in the Bankrupt Court, under the order of said Court.

It further appeared that the plaintiff's judgment against the said Ellis was duly scheduled in the name of M. N. Transon, the testatrix, in his Bankrupt petition which was filed in the Bankrupt Court March 24th, 1873, and that notice was mailed by the assignee to M. N. Transon, the testatrix, to Salem, her place of residence, which the executor never received. No notice was ever mailed to said executor nor served on him in any way whatever.

The usual publication in the newspaper was made and the executor filed an affidavit, in which he stated that he did not have any knowledge of the proceedings in Bankruptcy, until the defendant Ellis had obtained his certificate of discharge and said real estate had been re-conveyed to him by his assignee, and it was proved that said judgment had not been paid.

Upon this statement of facts, the plaintiff insisted that the judgment roll of the Superior Court of the county of Davie,

created from its date, to wit, August, 1870, a lien on the real estate of Ellis in said county, which was not divested by the proceedings in Bankruptcy; and that the plaintiff had the right to enforce this lien in the State Court, and moved the Court for leave to issue execution to keep alive said judgment.

The Court refused the motion, and the plaintiff appealed.

*D. H. Starbuck*, for appellant.
*Smith & Strong*, contra.

SETTLE, J. Congress has power, under the Constitution of the United States, to establish uniform laws on the subject of bankruptcies, throughout the United States.

In order to make the laws uniform the bankrupt tribunals must act independently of State tribunals, and must control them in all things pertaining to the bankrupt and his estate, for it would entirely destroy the system, by preventing that uniformity which is enjoined by the Constitution, if suitors should be permitted, at their pleasure, to withdraw from the bankrupt courts into the State tribunals, cases involving any of the questions which grow out of the administration of the assets of a bankrupt.

It is not denied that Congress could have withdrawn from the State Courts all cases pending against a bankrupt at the time of the adjudication of his bankruptcy, but for convenience, as it was supposed, this was not done, and the assignee of a bankrupt is permitted to prosecute or defend an action in the State Courts, either to recover the estate of the bankrupt or to ascertain the liabilities and liens upon it.

The bankrupt law does not divest a lien, but as all the property of a bankrupt, as well that subject to mortgages and liens as that which is unencumbered, passes to the assignee, and is *in custodia legis*, subject of course to priorities and liens, it follows that the bankrupt court is the proper tribunal in which to administer the remedies for the enforcement of liens.

The State Courts, as we have said, may be employed to col-

lect the assets of a bankrupt, and also to ascertain the liens which may exist upon such assets, but it is one thing to ascertain a lien, and quite another to liquidate it; and if a party can liquidate his own liens, through the intervention of State Courts, in the absence of the assignee, who represents the general creditors, there is no protection to other creditors against collusion and fraud between the bankrupt and such a claimant; further, the settlement of the estate of a bankrupt may be indefinitely postponed by tedious litigation in the State Courts.

While all subsisting liens are fully protected by the bankrupt act, we think, by the true interpretation of that act, all claimants against the estate of the bankrupt are required to prove their debts however evidenced. If not so, why, in addition to the requirement that the bankrupt shall enter upon his schedule all secured debts, &c., does the 22d section of the act require the claimant to prove his demand and disclose " whether any and what securities are held therefor?" The first section confers jurisdiction upon the bankrupt court to ascertain and liquidate the liens and other specific claims upon the assets of the bankrupt. Here are several courses open, in the bankrupt court, to the secured creditor, but he must adopt some one of them; he will not be permitted to sleep upon his lien until everything is closed in the bankrupt court, and then virtually nullify the whole thing by proceedings in the State Courts. If he remains outside of the bankrupt court, he does so at the risk of having his debt barred, and he may also lose the benefit of his securities. We are aware that cases may be found, in great abundance, both supporting and opposing the positions here assumed. We do not feel called upon to cite or comment upon them, but feel ourselves at liberty, in this conflict of authority, to adopt what appears to us to be the most reasonable interpretation of the bankrupt act, and one which will lead to the least confusion in the administration of the assets of a bankrupt. Indeed when we behold the obscurity in which this subject has been involved by the conflicting decisions of different courts, we are inclined to think that it would have been

better, had Congress withheld entirely from State tribunals all questions touching the bankrupt, his creditors and his assets.

We give no weight to the suggestion that the plaintiff in this case had no notice of the proceedings in bankruptcy, for this debt was entered upon the defendant's schedule, and notice was sent by mail addressed to the plaintiff's testatrix, and the usual publication of notice was made in the newspapers.

This Court has held in *Knabe & Co.* v. *Hayes*, 71 N. C. Rep., 109, that the discharge of a bankrupt does bar the claim of a creditor who had no knowledge of the filing of the petition in bankruptcy, and whose name was not inserted in the schedule of creditors, and to whom no notice was mailed, unless the creditor alleges and can show that the omission to give notice was the result of fraud on the part of the debtor, and not the result of forgetfulness, accident or mistake.

PER CURIAM.    The judgment of the Superior Court is affirmed.