## Jacob Hahn et al., Impleaded, etc., George A. Weiss v. Edward Geiger.

1. PAYMENTS—*Debtor May Make Application of Payments.*—A debtor, owing several claims to his creditors, may, on making a payment, himself apply it, and the application can not be changed by the creditor without the debtor's consent.

2. SAME—*Agreement Between the Debtor and Creditor.*—An agreement between the creditor and debtor as to how payments should be applied is equivalent to a direction by the debtor as to the application of such payments.

3. MORTGAGES—*Assignee of, Takes Subject to All Equities.*—The assignee of a mortgage takes it subject to all the equities existing between the mortgagor and mortgagee at the time of the transfer.

4. SAME—*Duty of Purchaser to Make Inquiries.*—In order to be protected, it is the duty of the purchaser of a mortgage to make inquiries of the mortgagor if there is any reason why it should not be paid.

5. APPELLATE COURT PRACTICE—*When Competent to Pass upon the Evidence.*—Where exceptions to the master's report are sustained, and a decree rendered contrary to the recommendations of the master, the Appellate Court is as free to pass upon the question of the credibility of the witnesses and the question of the preponderance of the evidence as is the trial judge.

Hahn v. Geiger.

**Foreclosure of a Trust Deed.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.    Heard in this court at the October term, 1900.    Reversed and remanded with directions.    Opinion filed July 18, 1901.

LACKNER, BUTZ & MILLER, attorneys for appellants.

ARNOLD TRIPP, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

April 13, 1899, the appellee, Edward Geiger, filed a bill to foreclose a trust deed, executed by Jacob Hahn and Karoline, his wife, to secure the payment of a promissory note for the sum of $2,000, of date August 14, 1896, payable two years after date, with interest at the rate of six per cent per annum.    The Hahns, George A. Weiss, the trustee, and Albert F. Madlener were made defendants to the bill.    After the issues were made up the cause was referred to a master to take proofs and report the same, with his opinion as to the evidence and the law.    The master's conclusion, as reported to the court, was that the appellee was entitled to a decree for $1,000, with interest at the rate of six per cent from October 5, 1898, and for $300 solicitor's fees.    Exceptions were filed to the master's report by the complainant, and also by the Hahns and Madlener, defendants, and the court sustained the complainant's and overruled the defendants' exceptions, and rendered a decree in favor of the complainant, appellee here, for $2,474.30, principal and interest, and $300 as solicitor's fees, from which decree this appeal is.

The facts of the case are substantially as follows:

Jacob Hahn desired to buy a saloon owned by one Charles May, and apparently had agreed with May as to the purchase price.    It being necessary for him to borrow some money to make the purchase, he went to the office of the American Brewing and Malting Co. (hereafter called the Brewing Co.) to negotiate for a loan, and there met Mr. Weiss, the president of the company.    Charles May, and Charles Christman, who was then in the employ of the company, were present.    It was there agreed between Weiss and Hahn that

the former would loan to Hahn for the Brewing Co. the sum of $2,000, and that Hahn was to pay the note by paying $2 on each barrel of beer purchased by him from the Brewing Co. in excess of the regular price, each $2 thus paid to be credited on his note for the amount loaned. That such was the agreement was testified to by Hahn, May and Christman, is not contradicted by any witness, nor controverted by counsel. In pursuance of this arrangement Hahn and wife executed the note and trust deed in question, and the sum of $2,000 was loaned to Hahn by the Brewing Co. Hahn completed the purchase of the saloon from May, took possession of it and purchased the beer sold by him from the Brewing Co. He had books furnished him by the company in which were entered by the company's agents all beer purchased by him, all debits against him and all credits in his favor. Among the findings of the master are the following:

"Twenty-first. Finds that as heretofore shown, the total credits of Hahn, from February 28 to October 5, 1898, were $2,319.50. The total debits to Hahn for beer during that period were $1,610, which deducted from the total credit leaves the sum of $709.50 in favor of Hahn, after paying for his beer during that period. During that time Hahn was charged with cash amounting to $352, which deducted from the $709.50 credit for payments for beer during that period, leaves a credit to Hahn of $357.50.

Outstanding against this credit of Hahn of $357.50 is Hahn's two debits during that period on account of notes, to wit, the balance of $1,000 on the note in question, and a charge of $500 for the note secured by chattel mortgage, which were charged to the debit side of Hahn's account, May 1, 1898.

Finds that defendant's solicitor claims that this $357.50 should be applied as a credit on the balance due on the note in question herein for the reason that according to the agreement, all amounts over and above payments for beer should be applied to the payment of the note in question herein, which would leave a balance due to complainant, if such claim should be allowed, of $642.50.

Finds that in the opinion of the master this contention on the part of defendant's counsel can not be allowed, and the position of the defendant's counsel in that respect is

untenable. That the brewing company had a right to apply these credits upon either of the notes as it preferred, and that if the credit had been applied to the balance of $1,000 due on Hahn's note in question herein by the brewing company and Hahn prior to the delivery of same to Fridrich, the complainant herein would have taken subject to such application."

The master's findings as to the items of debits and credits are supported by the evidence, and are correct, but we can not agree in his conclusion that the credit of $357.50 should be applied on the $500 note secured by chattel mortgage. It appears from the evidence that August 19, 1896, Hahn procured from the Brewing Co. an additional loan of $500 for which he gave his note secured by chattel mortgage on his saloon. This is the note on which the master finds the $357.50 should be applied. The original agreement having been, as heretofore stated, that all credits on account of the payment by Hahn of $2 in excess of the regular price on each barrel of beer purchased by him, should apply on the $2,000 note, and there being no evidence of any modification of that agreement, it applies to the $357.50 credit as much as to any other. The law of the application of payments is that a debtor, owing several claims to his creditor, may, on making a payment, himself apply it, and the application can not be changed by the creditor without the debtor's consent. Jackson v. Bailey, 12 Ill. 159.

If the debtor omits to exercise his privilege of directing the application, the creditor may apply the payment. McFarland v. Lewis, 2 Scam. 344.

In the present case there was an agreement between the creditor and debtor as to how payments should be applied, and this was more than equivalent to a direction by the debtor as to application. Hansen v. Rounsavell, 74 Ill. 238.

Appellant Hahn, on cross-examination by appellee's solicitor, testified that when he borrowed the $500 it was understood that the $2,000 note was to be paid first, and afterward the $500 note, and this is uncontradicted. No credits were indorsed on the $2,000 note. Mr. Sottmann,

the cashier of the Brewing Co., testified in explanation of the non-indorsement of credits on the note, that he had special instructions from Mr. Weiss, the president of the company, not to indorse credits on notes till they were fully paid.

But counsel for appellee contends that appellants are estopped to claim any credit on the $2,000 note, by reason of certain alleged statements made by Hahn. The evidence is that Albert Fridrich either purchased the $2,000 note from the Brewing Co., or it was assigned to him as collateral security for a loan, and that subsequently Fridrich sold it to appellee. The testimony of Fridrich and Geiger, relied on in support of the claim of estoppel, is as follows :

Albert Fridrich, witness on behalf of complainant:

" Have known Hahn about fifteen years. Remember a conversation that took place between myself and Hahn, about the latter part of September, 1898, which took place in my place of business, at the corner of Clark and Madison streets. Mr. Geiger, Shutz, Hahn and myself were present."

Q. " Tell what he said to you about this business; tell what he said in the latter part of September, 1898, about business." A. " I started first. I said, ' Mr. Hahn,' I says, ' the American Brewing Company they seem to be short financially. They want to borrow about $2,500 of me and give me your papers for your real estate security.' I said to him—"

Q. " Did you tell him what papers ?" A. " Yes, sir; mortgage."

Q. " State it all." A. " Mortgage."

Q. " What else ?" A. " For his property, and he laughed over it. He says he has got an account with the brewery, and he said, ' the brewery is good enough for it; that will be all right.' "

Mr. Tripp : " Now, Fridrich, I want you to tell me fully what he said. Look right up and tell me fully what he said. Now, what did you ask him about the note, if anything ? " A. " I asked Mr. Hahn whether it would be advisable for me to give them that money."

Mr. Tripp : " Yes ?" A. " And he says; ' Certainly; the American Brewing Company is good enough for me,' yes, sir; and I says, ' All right, then.' "

Hahn v. Geiger.

Q.   "Yes?"   A.   "And in a few days after that I gave the American Brewing Company the money."

Q.   "And took this note?"   A.   "And took this note."

Q.   "Now, Mr. Fridrich, when did this conversation between you and Mr. Hahn occur—when?"   A.   "In the month of September, in the afternoon."

Q.   "In the afternoon?"   A.   "Yes, sir."

Q.   "Can you give me about what part of September that was in?"   A.   "It was the early part of September."

Q.   "What?"   A.   "About the early part of September—first days of September."

Q.   "September?"   A.   "Yes, sir."

Q.   "What year?"   A.   "1898."

Q.   "When did you get the notes from the American Brewing Company?"   A.   "The third day; either the third or fourth day of September."

Q.   "No, no; when did you get the notes from the American Brewing Company, that is, the Hahn note; when did you get that?"   A.   "Oh, well—"

Q.   "Have you your book here which refreshes your recollections?"   A.   "Yes, sir."

Q.   "Don't answer until you are certain about those things, Mr. Fridrich."   A.   "October 5, 1898. It was about September, a month before, five or six weeks before October 5, 1898, that I had this talk with Hahn about the note."

On cross-examination the witness Fridrich testified that he could not tell exactly the date on which he had the conversation with Hahn in September, 1898; that it was the first days of September; that the conversation took place in his office, and that he had started the conversation.

Q   "Now, what did you say?"   A.   "I said, Mr. Hahn, I says, 'The American Brewing Company, they want to borrow some money and give me security with your papers for your real estate mortgage.' He seemed surprised, and he says, 'Well, I don't care. I have got some account with them, and the Brewing Company is good enough for me.'"

Q.   "That is what he said to you, was it?"   A.   "Yes, sir."

Q.   "Now, didn't he tell you at that time, Mr. Fridrich, that he had paid a large part of that mortgage off to the American Brewing Company?"   A.   "No; he didn't say a large part."

Q.   "Well, he told you that he had paid some?"   A.   "Some account with them."

Q. "He told you he had paid some of that mortgage off, didn't he?" A. "He had an account with them."

Q. "Didn't he tell you he had paid part of that mortgage off?" A. "No; he didn't mention that at all. He says he had an account with them." * * *

Q. "Now, what else did you say—" A. "Well, that is most of it."

Q. "If anything?" A. "I simply asked them; I asked him if he thought it was all right by me giving this money on those papers. He said, 'Why, certainly.'"

Q. "He said, 'Why, certainly?'" A. "The Brewing Company was good enough for it."

Q. "He said the Brewing Company was good enough for it?" A. "Yes, sir."

Q. "That is what he said?" A. "Yes, sir."

Q. "Didn't he tell you at that time that he paid, on account of this mortgage, over $1,000 to the American Brewing Company?" A. "No, sir."

Q. "On account of this note?" A. "No, sir."

Q. "He didn't tell you?" A. "No, sir."

Q. "Are you sure about that?" A. "I am sure."

Q. "Did he tell you he paid any amount on that mortgage?" A. "No, sir. He simply said he had an account—I didn't ask him what account it was—with the Brewing Company."

Q. "Did he say he had a credit balance there?" A. "No; he never said he had a credit balance."

Edward Geiger, witness in his own behalf, recalled, testified:

"In September, 1898, I was manager of the Fridrich place. I have known Mr. Hahn for the last ten years. Remember of an occasion of his coming down to Fridrich's place in September, 1898. I heard the conversation that took place between Fridrich and Hahn at that time with reference to those notes."

Q. "Now, then, I wish you would give me what you heard pass between Mr. Hahn and Mr. Fridrich." A. "It was in the afternoon. Mr. Hahn went into Mr. Fridrich's place, and I remember of Mr. Fridrich, he made the remark, 'How do you do, Mr. Hahn?' He says so and so. He says, 'You are just the man I like to see, anyway;' because the brewery was around there, they wanted to loan some money from Mr. Fridrich, and they offered him some papers; so he found out that the papers signed from—it was Mr. Hahn's papers."

Hahn v. Geiger.

Q. " Yes ? "   A.   " And to be sure how it is, he asked Mr. Hahn, ' How you stand?   How are them papers ? '   So Mr. Hahn says, ' I got some business transaction with the brewery, and them papers is all right, and everything is all right.'"

Q.   " Do you remember anything about his saying anything about the account—"   A.   " Nothing at all."

Q.   " Between Hahn and the Brewing Company ? "   A. " No."

Q.   " You didn't hear that ? "   A.   " No, I didn't hear that."

On cross-examination the witness testified :

Q.   " What he (Fridrich) said was that the American Brewing Company wanted to give it to him; is that it ? " A.   " The American Brewing Company wants some money to loan from Mr. Fridrich, and offered him them papers as security."

Q.   " I will ask you, did not Mr. Hahn say at that conversation that he had paid quite a little part of that mortgage off ? "   A.   " No, sir."

Q.   " To the American Brewing Company? "   A.   "No, sir; he didn't say nothing."

Q.   " He didn't say anything? "   A.   "No; it was a very short conversation; that is what it was."

Q.   "He didn't say anything about any account—"   A. " No, no."

Q.   "With the American Brewing Company at all ? " A.   " No, sir."

Q.   " You were there all the time during that conversation ? "   A.   " Yes, sir; yes."

Q.   "Heard 'all of it?"   A.   "Yes, sir."   *   *   *

Q.   "You heard all the conversation that took place between Fridrich and Hahn?"   A.   "Yes, sir."

Q.   "Did Hahn say anything about his account with the American Brewing Company?"   A.   "Nothing about the account."

Q.   " He didn't say that he had an account with the American Brewing Company ? "   A.   "Nothing about it. Simply Mr. Hahn said, 'I got some business transactions with the brewery, and I gave them some papers, and it is all right; everything is all right.' "

Jacob Hahn, on behalf of defendants, testified as follows:

" In September, 1898, I first found out that Fridrich had the $2,000 mortgage made by me."

Q. "What did you do then—where did you go then?"
A. "I went right straight back. There I found out where
my mortgage and the notes were, and then I went right out
straight down to Fridrich's. It was in the afternoon, and
I asked him, I says, 'You got my mortgage here?' He
says, 'Yes,' and I asked him, says I, 'Do you know how
much there is paid on it?' And he says, 'No.' I says,
'You got them here?' He says, 'Yes; but I don't know
exactly where they are just now.' And that was the only
conversation we had together there, and I walked out."

Q. "Did you say anything to him, at that time, about
that you had paid anything off on that mortgage to the
American Brewing Company?" A. "Yes, sir; I told him
that in the neighborhood of $1,400 I had paid off. That
was in Fridrich's saloon, in September, 1898."

Q. "Who was there beside you and Fridrich?" A.
"Fridrich, Geiger, and there was another man there, but
they could not find the papers right away, and in other
words I told Mr. Fridrich yet, 'Why didn't you come to
me right away and ask me? You knew me.' 'Well,' says
Fridrich, 'Mr. Weiss and myself, we always been good
friends, and I thought it was all right.' That is what he
said."

Q. "Did he ask you in substance whether it would be
advisable for him to take those papers?" A. "No, sir."

Q. "Did you say to him that it was all right, that the
American Brewing Company was all right?" A. "I
didn't tell him that; me and Fridrich we hadn't a conversa-
tion together at all. I found out that he had the papers, and
that is just what I have given now. That conversation
with Fridrich was about the middle of September, 1898." ·

It will be observed that Fridrich, in the first part of his
testimony, fixes the time of the conversation in the latter
part of September, 1898, and, in his subsequent testimony,
in the latter part of September, or a month or five or six
weeks before October 5, 1898; also, that he got the note
from the Brewing Co. the 3d or 4th of September, when
he did not get it till October 5, 1898. It nowhere appears
in his testimony that he asked Hahn whether he had paid
anything on the note, or had any defense to it, or any part
of it, or whether there was any reason why it should not
be paid. In his examination in chief he testifies: "I said,
Mr. Hahn, I says, the American Brewing Company, they

seem to be short financially. They want to borrow about
$2,500 of me, and give me your papers for your real estate
security," and that Hahn laughed, and "He says he has got
an account with the brewery, and he said, 'the brewery is
good enough for it; that will be all right.'" This certainly
was not equivalent to a statement that Hahn had not paid
anything on the note, or had no defense to it, and was evi-
dently unsatisfactory to complainant's counsel, who imme-
diately proceeded to ask the witness: "Now, Fridrich, I
want you to tell me fully what he said. Look right up and
tell me fully what he said. Now, what did you ask him
about the note, if anything?" A. "I asked Mr. Hahn
whether it would be advisable for me to give them that
money." Q. "Yes?" A. "And he says, 'Certainly, the
American Brewing Company is good for me,' and I says,
'All right, then.'" Hahn's answer seems confined to an
expression of opinion as to the financial ability of the Brew-
ing Co. On cross-examination the witness is asked: "Now,
didn't he tell you at that time, Mr. Fridrich, that he had
paid a large part of that mortgage off to the American
Brewing Company?" A. "No, he didn't say *a large part*."

Geiger testified that he owns the $2,000 note; that he
purchased it from Fridrich, April 11, 1899, and paid him
$2,000 in currency for it. He says he was manager of
Fridrich's place, and paid the money in Fridrich's private
office; that he had no bank account and no book showing
the payment. The second day after purchasing it he filed
the bill to foreclose. He is the party interested, so far as
appears from the record. He testifies that he was present
at the conversation between Hahn and Fridrich, and heard
the whole conversation, and yet his version of it is radically
different from that of Fridrich. He testified that Fridrich
asked him, "How you stand? How are them papers?" and
that Hahn said, "I got some business transactions with the
brewery, and them papers is all right;" that Hahn said
nothing about having an account with the Brewing Co.
Although the note was past due at the time of the alleged
conversation, it does not appear either from the testi-

mony of Fridrich or Geiger that any question was asked as to why it had not been paid, or whether anything had been paid on it. Had these questions been asked, we think there can be no doubt that Hahn would have answered them fully and truthfully. It would have been to his interest so to do, and he had no interest whatever inducing him to mislead Fridrich. After the transfer of the note to Fridrich, Hahn sold the premises conveyed by trust deed to the defendant Madlener, subject to the trust deed, and both he and Madlener testified that he, Hahn, told Madlener of the payments made on the note. Hahn's evidence as to his transactions with the Brewing Co. is fully corroborated by other witnesses, some of them former employes of the company; and the witnesses Fridrich and Geiger are the only witnesses who contradicted him in any particular, and they do not agree in their testimony. Appellee's counsel, in his argument, says, in regard to the finding of the Circuit Court, " This court will not disturb that finding, unless manifestly against the evidence." Such is the general rule, when the report of a master, who saw the witnesses and heard them testify, is confirmed by the court. But such is not the present case. In this case the exceptions of the complainant to the master's report were sustained, and a decree rendered contrary to the recommendation of the master, and we are as free to pass on the question of the credibility of the witnesses and the question of the preponderance of the evidence as was the learned judge of the Circuit Court. The master's finding, in reference to the conversation between Hahn and Fridrich, is that it " is too general to warrant a finding of estoppel in favor of complainant." We think the finding warranted by the evidence. " It is the duty of the purchaser of a mortgage to inquire of the mortgagor if there be any reason why it should not be paid." Olds v. Cummings, 31 Ill. 188, 192; McAuliffe v. Reuter, 166 Ib. 491, 496; Buehler v. McCormick, 169 Ill. 275.

In the last case the court say:

" In Walker v. Dement, 42 Ill. 272, it is said: ' To be

protected, the assignee must omit no duty, nor fail to exercise every reasonable precaution, which prudence demands of all men acting in reference to matters of moment.'"

Fridrich represents himself as about to loan money on the security of a note and mortgage to a company which he says seemed to be short financially; he converses with the maker of the note and mortgage; he knows that the note is past due, and therefore there may be some reason for its not having been paid, and yet he fails specifically to inquire whether there is any reason why it should not be paid. We can not doubt that had he so inquired he would have been fully informed of the facts. Hahn testifies that he did so inform him. It appears from Hahn's testimony that when he conversed with Fridrich in September, 1898, he was of the impression that Fridrich then held the note and trust deed, although they were not transferred to him till October 5, 1898. He, perhaps, had heard a rumor that Fridrich was negotiating for them. Hahn, Fridrich and Geiger agree that the conversation was in September, 1898, and Hahn testifies that he then told Fridrich that he had paid in the neighborhood of $1,400 on the note. It is a fair inference, from Fridrich's testimony, that Hahn then told him that something had been paid on the note. When asked if Hahn did not tell him that he had paid off a large part of the mortgage, his answer was, " No, he didn't say a large part." The answer is a negative pregnant. The burden was on appellee to prove matter in estoppel, and we are of opinion, after carefully considering the evidence, that an estoppel is not proved by a preponderance of credible evidence.

Appellee's counsel calls attention to what he deems inconsistencies in the testimony of Hahn. When Hahn was first called as a witness he was asked when he saw Fridrich, and answered that he could not recollect that very well; that he guessed it was in the first part of the year 1899. Subsequently, his memory doubtless having been refreshed, he testified that it was in September, 1898, and this is corroborated by Fridrich and Geiger. So far as inconsistencies

in respect to dates are concerned, there are more in Fridrich's testimony than in Hahn's.

Hahn also testified that, after conveying the premises described in the trust deed to Madlener, subject to the trust deed, he continued to make payments to the Brewing Co. as before. This is explained by his evidence, drawn out by appellee's solicitor on cross-examination, which is, in substance, that when he borrowed from the Brewing Co. $500 on his note secured by chattel mortgage, it was agreed that he should pay that note in the same manner as he had agreed to pay the $2,000 note, but the latter was to be paid first. The trust deed provided for a reasonable solicitor's fee, and the master and the court found that $300 was reasonable, and the court allowed that amount. Mr. Tripp, appellee's solicitor, testified that $300 was a reasonable fee for his services. Mr. McIlvaine, attorney, testified that if defendants were successful in reducing the complainant's claim to $400 or $500, $100 would be a reasonable fee, and Mr. Patton, attorney, testified that $200 would be a reasonable fee. We are of opinion from the evidence, and considering the circumstances of the case, that $200 is a reasonable solicitor's fee.

The decree will be reversed and the cause remanded, with directions to the Circuit Court to enter a decree for $642.50 with interest at the rate of six per cent per annum from October 5, 1898, and for $200 as a solicitor's fee and appellee's costs of the Circuit Court, appellants to recover their costs of this court. Reversed and remanded, with directions.