### In re WATERLOO ORGAN CO.

(District Court, W. D. New York. November 6, 1902.)

#### No. 1,073.

1. BANKRUPTCY COURTS — PROPERTY SUBJECT TO JURISDICTION — ADVERSE CLAIMS.

A mortgage on property owned and thereafter acquired by a corporation provided that the mortgagee might enter into possession in case of default in the payments of principal or interest for 60 days. Thereafter the mortgagor was adjudged a bankrupt, and on the same day, but prior in time thereto, the mortgagor surrendered to the mortgagee possession of the property, including that acquired after the execution of the mortgage, though there had been no 60-days default in the payments of principal or interest. Held, that the mortgagee was not such an adverse claimant to the property as would bar jurisdiction of the federal court to determine the validity of its claim.

2. SAME—SALE OF MORTGAGED PROPERTY—TRANSFER OF LIENS.

A referee in bankruptcy may direct the manner of sale of property of a bankrupt estate free from liens and incumbrances, preserving and transferring bona fide liens thereon to the proceeds of the sale.

3. SAME—BID BY LIENHOLDER—PAYMENT.

A responsible bank held a mortgage on certain property as trustee of the bondholders of the mortgagor. The mortgage covered not only prop-

---

¶ 2. See Bankruptcy, vol. 6, Cent. Dig. § 365.

erty owned at the time of its execution, but also subsequently acquired property. On the bankruptcy of the mortgagor, the amount of the property in existence at the date of the mortgage, and conceded to be subject to, its lien, was determined by the referee, who, without determining the validity of the lien of the mortgage on the after-acquired property, directed that the whole of it should be sold free of incumbrances, and the liens transferred to the proceeds of the sale. *Held* that, in case the mortgagee purchased the property at the sale, it should be permitted to pay therefor by presenting receipts from the bondholders to the extent of the conceded lien, and by giving an approved undertaking in the amount of the undetermined lien, whereby it should agree to pay to the trustee such amount as should be determined to be value of the property subsequently found not to be subject to the lien, or, on the mortgagee's qualifying as a depositary of bankruptcy funds, it might pay such amount in cash to the trustee in bankruptcy, who should thereupon make a deposit of the same with the mortgagee.

Hammond & Hammond, for petitioner.

Frederick L. Manning (James L. Quackenbush, of counsel), for trustee.

George E. Zartman, in pro. per.

HAZEL, District Judge. This is a review of an order of Charles A. Hawley, referee, directing a sale of certain property of the bankrupt, free from the liens of two mortgages upon the same given to the First National Bank of Waterloo as trustee for the bondholders of the bankrupt. The mortgages were executed December 1, 1894, and January 21, 1899, respectively. The bank, as mortgagee, after the petition in bankruptcy was filed, and before adjudication, took possession of certain personal property acquired subsequent to the execution of the second mortgage. Has the bank such an adverse claim of title as will preclude this court from asserting jurisdiction and making the order under review? I have examined the cases to which my attention has been called, and conclude that the national bank has no such possession of the property as vested it with the title thereto, and need not be considered an adverse claimant. The case of Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, is authority for the power of the bankruptcy court to ascertain whether any basis for an adverse claim actually existed at the time of filing creditor's petition. The referee proceeded on the assumption that the asserted adverse claim of the bank was not well founded. In this conclusion I fully concur. The bank cannot be considered to have a higher interest in the property than that of a lienor. Sexton v. Breese, 135 N. Y. 390, 32 N. E. 133. The proper construction to be given to the instruments executed and delivered by the bankrupt to the national bank in trust for the bondholders must be found in state authority. In New York Security & Trust Co. v. Saratoga Gas & Electric Light Co., 159 N. Y. 137, 53 N. E. 758, 45 L. R. A. 132, the court of appeals construed a mortgage like that under consideration as follows:

"The right of the mortgagor to deal with the products and earnings is entirely inconsistent with the existence of any lien upon future products or earnings. That the true construction of the instrument is that although, in terms, it purports to include future earnings and products, it does not, as against general creditors, operate as a lien upon such earnings until actual entry and possession under the mortgage by the mortgagee, and cannot have

any retroactive operation, since it would then deprive the unsecured creditor of the fund upon the faith of which he may have given credit to the mortgagor during the time when the latter was permitted to deal with it as his own."

It follows that under the instrument in question the mortgagee acquired no higher interest than a lien. In the case at bar the possession of the property covered by both mortgages and the after-acquired property was surrendered by the bankrupt on the day of adjudication, and prior thereto in time. The surrender is deemed to be justified by a clause in the mortgages which allows the mortgagee to enter into possession in case of default in the payments of principal or interest for a period of 60 days. That period had not then expired. Doubtless other questions regarding the validity and invalidity of the provision allowing the mortgagee to enter, contained in the latter mortgage (which includes subsequently acquired personal property), will be raised when the matter finally comes before the referee for determination. It suffices to determine now that the exercise of such right of possession under the mortgage does not constitute the national bank, mortgagee, such an adverse claimant as to bar the jurisdiction of this court to determine the validity of its claims.

It is in the province of the referee to direct the manner of sale free and clear of incumbrances, and he may preserve and transfer bona fide liens to the fund arising from the same. Trust Co. v. Benbow, 3 Am. Bankr. R. 9, 96 Fed. 514; In re Cobb, 3 Am. Bankr. R. 129, 96 Fed. 821; In re Pittelkow, 1 Am. Bankr. R. 472, 92 Fed. 901; In re Matthews, 6 Am. Bankr. R. 96, 109 Fed. 603; In re Kellogg, 7 Am. Bankr. R. 623, 113 Fed. 120.

The referee directs that the liens of the two mortgages or deeds of trust shall attach to the proceeds to the extent of their respective liens. He has adjudged the value of the property concededly subject to this lien of the mortgages, and acquired prior to their execution, to be two-fifths of the value of the entire property described therein. The value of the property purported to be embraced in the second mortgage, which was acquired after delivery of the mortgage to the bank, is adjudged to be three-fifths of the entire value of the properties described in both mortgages, and therefore it is directed by the referee that three-fifths of the proceeds shall stand in its place. The proportion of values as found by the referee is assented to by the bank. It is further directed by the order of sale that two-fifths of the proceeds of sale of the entire properties shall be distributed pro rata to the bondholders who are secured by the mortgages, which shall be established as valid liens. The referee then directs that the remaining three-fifths of the proceeds shall be specially deposited and kept until the extent of the lien created by the later mortgage, and the rights of the trustee in bankruptcy to such proceeds, shall be legally determined. The order finally provides that, if the national bank shall purchase the property as trustee for bondholders, it shall pay in cash three-fifths of the entire proceeds of the sale; as to the balance, the bank shall deliver to the trustee receipts, signed by the owners of bonds, for their pro rata share of two-fifths of the purchase price. In other words, the bank, in case it elects to purchase the bankrupt's property to protect its liens, is not permitted to apply on the purchase price the value of the subsequently acquired personal property upon which it claims a lien,

on the theory that the pretended lien thereon is void as against general creditors. As to such proportionate value the bank is required to pay in cash; the proceeds, however, to stand in place of that portion of the property sold. The mortgagee contends that the manner of sale directed by the referee is prejudicial to its lien, and tends to sacrifice the rights of the bondholders in the bankruptcy estate. The appraised value of the property is in the neighborhood of $40,000, and on the argument of this review the trustee intimated that an intending purchaser would bid on the sale approximately the appraised value. The trustee is required to diligently discharge his trust, and to energetically conserve the assets of the bankrupt for the benefit of the creditors. Accordingly I deem it best that the sale of the bankrupt property described in the petition shall be made under the direction of the bankruptcy court. The proportionate value of the after-acquired property, as adjudged by the referee, is not controverted. In fact, as has been already said, it is assented to by the bank. Undoubtedly the interest of the bank as trustee requires that it shall bid at the sale to protect its claim. Shall the bank, in the event of its being the highest bidder at the sale, pay in cash the proportionate value of the personal property acquired by the bankrupt after delivery of the second mortgage? The financial responsibility of the bank is not questioned. The validity of the lien of the bondholders is in dispute. Nevertheless the funds were loaned in good faith. Compliance with the order of sale as made by the referee would deprive the bank, if it bid in the property, of the use of the moneys paid to protect its apparent lien during the pendency of any litigation over the proceeds concerning the validity of the lien of the second mortgage. The funds would remain on deposit in another bank until the controversy was ended. Then, if the lien of the bank was established, it would be paid back by order. On the other hand, if the bondholder's liens under the second mortgage were held to be invalid, the referee would not apply the fund to the payment of such liens or bonds, but the fund would be paid to the general creditors. It is undoubtedly the duty of the court to consider the interests of lienors as well as creditors of the bankrupt. I am unable to perceive that the interests of the creditors will be endangered or become in any manner jeopardized by requiring the national bank to give an undertaking in the amount of three-fifths of the bonded indebtedness if it buys the property, and which shall be accepted by the trustee upon the sale for that amount, instead of requiring a cash payment of that amount, as provided by the order of sale. The undertaking shall be approved by the referee. It shall provide for payment to the trustee of such amount as shall be determined to be the value of the property which is not subject to the lien of the bank. Should, however, the bank qualify as depositary of bankruptcy funds, under section 61 of the act [U. S. Comp. St. 1901, p. 3446], it may pay the amount of its bid in the manner required by the order of sale here reviewed, and the trustee in that event is directed to make special deposit of the same with the First National Bank of Waterloo.

The order of sale is accordingly modified to conform hereto. Counsel for the trustee may prepare an order, submitting it for approval to counsel for the national bank. If no agreement as to its form is reached, the court will settle the same.