[No. 9853.  Department Two.  November 9, 1911.]

ROSS-HIGGINS COMPANY, *Appellant*, v. B. J. ROOK *et al.*,
*Respondents.*[1]

PAYMENTS—EVIDENCE—SUFFICIENCY—APPLICATION OF PAYMENTS—
BILLS AND NOTES.  Where a payment was made under an agreement
that the same should be accepted and applied as payment in full of
a note and also of an outstanding account, and that the note should
be sent to the maker, the defense of payment of the note is estab-
lished; and the creditor cannot apply the payment to the open ac-
count, indorsing only the balance on the note.

Appeal from a judgment of the superior court for King
county, Irwin, J., entered December 23, 1910, upon findings
in favor of the defendants, after a trial on the merits before
the court without a jury, in an action on a promissory note.
Affirmed.

*Byers & Byers*, for appellant.

*Dorr & Hadley*, for respondents.

ELLIS, J.—This action was brought in the superior court
for King county, in February, 1910, by the appellant
against the respondents to recover an alleged balance due
upon a promissory note.

The note was dated at Skagway, Alaska, July 22, 1902,
was for the sum of $1,425, and was payable at the Canadian
Bank of Commerce, Skagway, Alaska, three months after
date.  The complaint alleges that no part of the note has
been paid except the sum of $605, which was paid on No-
vember 28, 1902.  The answer admits the execution and de-
livery of the note, denies that it was executed or delivered at
Skagway, and alleges that it was executed and delivered at
White Horse, Yukon Territory, and sets up affirmative de-
fenses as follows: Payment, estoppel by conduct of appel-
lant amounting to a renunciation, fraud of appellant in re-

[1]Reported in 118 Pac. 744.

taining the note, and the bar of the statute of limitations. The affirmative allegations of the answer were traversed by the reply. The action was tried without a jury, and the court, finding for the respondents on all the issues, entered judgment in their favor dismissing the action. From that judgment, this appeal was taken.

The evidence shows that the respondents were doing a general grocery and outfitting business at White Horse and also at Dawson, in Yukon Territory, and that, at the time of the alleged payment of the note, their business at White Horse was in charge of one J. S. Rook, a brother of respondents in their employ. The appellant was engaged in the grocery and outfitting business at Skagway, Alaska, and it was admitted that one C. B. Haraden was its agent and manager there. The parties to this action had business dealings covering a number of years, and at the time of the payment in question, the respondents owed the appellant, in addition to the amount evidenced by the note, a balance on open account, the amount of which Mr. Haraden testified was about $1,100. Mr. P. A. Rook, one of the respondents, who was then at Dawson, testified that he did not remember the amount, but that it was agreed by correspondence with Mr. Haraden that the whole amount, including the note, should be settled by payment of $1,750. J. S. Rook testified that he received that amount from the respondents at Dawson, with direction to settle the indebtedness when Mr. Haraden should call for it. The evidence conclusively shows that Mr. Haraden went from Skagway to White Horse on November 27, 1902, and there, at the respondents' place of business, J. S. Rook, as agent for the respondents, offered to him the sum of $1,750, with the definite statement that if accepted it was to be in full payment of all sums due from respondents to appellant, save a certain small current bill which was paid separately at the same time; that after some discussion, the appellant's manager, Mr. Haraden, acceded to the offer, and when Mr. Rook asked for the note, Mr. Haraden stated that he had

left Skagway before the bank opened and could not bring
the note, but would send it over by mail on the following
day when he returned to Skagway, and offered to give a re-
ceipt for the money. Mr. Rook agreed to this, and Mr.
Haraden. then wrote out a receipt which, omitting the signa-
ture, reads as follows:

"White Horse, Y. T.    Nov. 27, 1902, Rec'd from Rook
Bros. Seventeen Hundred & Fifty Dollars in full of all de-
mands to date including note at Canadian Bank of Com-
merce, Skagway, Al."

J. S. Rook testified positively that Mr. Haraden signed
the receipt, and Haraden testified just as positively that he
did not. This, however, we deem immaterial, since Haraden
admits that he wrote the receipt and delivered it to Rook,
intended to sign it, and would have done so had its lack of
signature been noticed, and that he intended it to embody
the agreement to surrender the note, made at the time.    3
Wigmore, Evidence, p. 2897, § 2134.    He also admits that
the delivery of the receipt and the promise to send the note
to Rook induced the payment of the money; that he took
the $1,750 and, upon his return to Skagway next day, ap-
plied it in discharge of the open account in full, and en-
dorsed the balance of $605 as a payment on the note.    It is
entirely immaterial whether the payment was intended as a
full settlement of the open account or not.    This suit was
brought upon the note alone, and the testimony of Mr. Har-
aden makes it plain that the payment was made and accepted
with the definite agreement that it should be applied in full
payment of the note.    He testified as follows:

"Q. And this was your main business over there, wasn't it?
A. Yes, sir.    Q. To get that money?    A. Yes.    Q. Did he
ask you for the note?    A. Yes.    Q. What did you tell him?
A. I told him that note was in the bank at Skagway, I came
away before the bank was opened and I would have to send
that note to him.    Q. You told him you would send it to him?
A. Yes, sir.    Q. Did you tell him you would send it to him
next mail or right away?    A. I told him I would get the

note out of the bank and return it to him.  Q.  Send it to him?  A. Yes, sir.  Q. And on the strength of that he paid you the money?  A.  Yes, sir.  Q.  But you never sent him the note?  A.  No, sir.  Q.  You never intended to, did you?  A.  At that time I did intend to.  Q.  Sir?  A.  At that time I did intend to.  Q.  You did intend to do it?  A.  Yes, sir.  Q.  Well, you must have changed your mind very quickly then?  A.  I changed my mind after talking with an attorney and with the president or manager of the bank there."

And again:

"Q.  You passed the receipt to him and he gave you the money immediately?  A.  He read the receipt and laid it over on the further side of the table and paid me the money.  Q.  Right then and there?  A.  Right then and there.  Q. And you promised to send him the note the next morning or immediately as soon as you got back?  A.  Yes, I promised to send the note.  Said that in the receipt, the receipt says that.  Q.  The receipt says that, and that was your agreement, what is in the receipt?  A.  Yes, sir.  Q.  No matter whether you signed it or not, that was the agreement that you made?  A.  Yes, sir.  Q.  Now, this note that is being sued on is the same note that was referred to in that receipt?  A.  Yes, sir."

He made it equally clear that he meant to sign the receipt:

"Q.  (The Court).  You started to make a statement as to why and how you remembered that you had not signed that receipt.  A.  Why, as soon as I got my money I went right out of the office, and I remember of course that I simply passed it over for him to look over, and if it was satisfactory I intended to sign it, and if it was not satisfactory, I intended for him to return it to me; and he read it over and said it was satisfactory and paid me the money."

Whatever may be said of the open account, there can be no question under this evidence as to the agreement that the money should be applied so as to satisfy the note in full.  It is elementary that, in case of voluntary payment by a debtor, the creditor if he accepts the money must apply it as di-

rected by the debtor, and *a fortiori*, where there is, as here, an agreement as to the application, the payment must be applied as agreed. 30 Cyc. pp. 1230, 1231.

"In the present case there was an agreement between the creditor and debtor as to how payments should be applied, and this was more than equivalent to a direction by the debtor as to the application." *Hahn v. Geiger*, 96 Ill. App. 104-107.

See, also, *Hansen v. Rounsavell*, 74 Ill. 238; *Hughes v. McDougle*, 17 Ind. 399; *Hanson v. Cordano*, 96 Cal. 441, 31 Pac. 457; *Perot v. Cooper*, 17 Colo. 80, 28 Pac. 391, 31 Am. St. 258.

The defense of payment being thus fully established by the admitted facts, a consideration of the other defenses becomes unnecessary.

The judgment is affirmed.

DUNBAR, C. J., CHADWICK, MORRIS, and CROW, JJ., concur.