## THE WILLAMETTE VALLEY.

### CLARK v. CHANDLER.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1895.)

No. 206.

COMITY — VESSEL IN POSSESSION OF RECEIVER — ENFORCEMENT OF LIEN FOR SUPPLIES.

Where a receiver sends a vessel, belonging to his trust, out of the jurisdiction of the court appointing him, and into a port of another state in charge of a master, he places her in the position of all other vessels engaged in the same business; and, when supplies are there furnished upon her credit, there is no rule of comity to prevent an admiralty court of that jurisdiction from enforcing the lien against her by proceedings in rem. On the contrary, the enforcement of such lien is a matter of right, not dependent upon the consent of the court by which the receiver was appointed. 62 Fed. 293, affirmed. Barton v. Barbour, 104 U. S. 126, distinguished.

Appeal from the District Court of the United States for the Northern District of California.

This was a libel by R. D. Chandler against the steamship Willamette Valley (Charles Clark, receiver, claimant) to enforce a lien for supplies. Exceptions to the libel were overruled, and a decree

entered for libelant. 62 Fed. 293. Afterwards an order of sale pendente lite was entered. 63 Fed. 130. The claimant appeals.

Page, Eells & Wheeler, for appellant.

Andros & Frank, for appellee.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The steamship Willamette Valley, a vessel of the United States, and enrolled at the office of the collector of customs at the port of Yaquina, in Oregon, was the property of the Oregon Pacific Railroad Company, a corporation established under the laws of the state of Oregon. The western terminus of the railroad was at Yaquina, and the steamship was employed in connection with the road in transporting passengers and merchandise between that port and the port of San Francisco. In October, 1890, in a suit commenced in the circuit court of the state of Oregon for Benton county to foreclose a certain mortgage upon the property of said railroad company, a receiver of the property of said corporation, including the steamship in question, was appointed by the court. The receiver, acting under the orders of said court, continued to operate the road, and the steamship in connection therewith, in the manner in which the same were operated before the receivership. In the regular course of the business of the steamship she was supplied by the libellant with coals, at the port of San Francisco, of the value of $7,781.75, and for the coal so furnished at that port she was there libeled. It was stipulated by the parties to the libel that the coals mentioned in the libel as furnished to the steamship were in fact so furnished; that the value thereof was as stated in the libel, and that they were furnished at the request of the master of said steamship, for the use thereof and on the credit of said steamship; and that they were necessary for the navigation of said vessel in the business in which she was then engaged. Upon this stipulation of facts the district court held that a maritime lien inured to the benefit of the libelant, which was enforceable in said proceeding.

Upon the appeal from that decree it is contended upon behalf of the appellant—First, that the steamship, being in the charge and control of a receiver, was not liable to be sued or seized in any court; and, second, that even if such right of seizure or action existed, it could not be exercised without the permission of the court which had jurisdiction over the receiver and controlled his action.

In considering these questions, which are believed to be new, reference must be had to some of the underlying principles of law governing receivers and the law maritime. The powers of a receiver are bounded by the territorial limits of the court under whose authority he is appointed and acts. Within that territory the possession by the receiver of the property placed under his control will be respected by all other courts, and his possession may not be disturbed by process issued out of any court. Taylor v. Carryl, 20 How. 583; Freeman v. Howe, 24 How. 450; Ellis v. Davis, 109

U. S. 485, 3 Sup. Ct. 327; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355; Borer v. Chapman, 119 U. S. 587, 7 Sup. Ct. 342; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906. The reason of the rule, as expressed in Covell v. Heyman, is that to disturb property in the possession of the receiver upon process from another court "would be to invade the jurisdiction of the court by whose command it is held, and to violate the law which that jurisdiction is appointed to administer."

But the rights which a receiver may enjoy without that jurisdiction are purely those which may be conceded by the courts of the foreign jurisdiction. His right to sue in such foreign jurisdiction concerning the property of his trust, although it has been denied in some states, is usually respected. But this right is always subjected to the limitation that the receiver will not be permitted to use the foreign court to the detriment of the citizens of the state to which it belongs. If the person, firm, or corporation whose assets are placed in the hands of such receiver owed debts in the foreign state, the courts of that state will protect the right of resident creditors to attach and levy upon any property of such nonresident debtor which may be found within that jurisdiction, so long as the same has not been reduced to the actual possession of the receiver, and will protect their right to first satisfy their demands out of such property, rather than relegate them to a foreign tribunal for the enforcement thereof. Hunt v. Insurance Co., 55 Me. 298; Hurd v. City of Elizabeth, 41 N. J. Law, 1; Runk v. St. John, 29 Barb. 585; Catlin v. Silver-Plate Co., 123 Ind. 477, 24 N. E. 250; Bank v. McLeod, 38 Ohio St. 174. But if, upon the other hand, the receiver should first obtain the possession of said property before an attempt is made to subject the same to the payment of domestic debts, or if, as in this case, in the prosecution of the business which he is appointed to conduct, or otherwise, he should take any of the property of his trust into the foreign jurisdiction, his possession and right of possession will be respected in the foreign tribunal, even as against the rights of creditors there residing, who may attempt to subject the same to the satisfaction of debts created before the receivership. Chicago, M. & St. P. Ry. Co. v. Keokuk Northern Line Packet Co., 108 Ill. 317; Pond v. Cooke, 45 Conn. 126; Cagill v. Wooldridge, 8 Baxt. 580; Killmer v. Hobart, 58 How. Pr. 452. This rule of comity is denied, however, in California, where it is held that a resident creditor may attach property which has been in the actual possession of a foreign receiver, and is afterwards brought within the state. Humphreys v. Hopkins, 81 Cal. 551, 22 Pac. 892.

But the decisions establishing the immunity of the receiver's possession of the property brought by him into a foreign jurisdiction refer solely to the attempted enforcement of demands that existed before the property was taken under the control of the court. In the case at bar the property of the receiver is not seized upon such a demand. The libelant is not here seeking to enforce a lien that attached to the vessel while in the possession of her owners, but one that arose in the regular course of the business

assumed and undertaken by the receiver. The steamship was obliged to and did incur an indebtedness in the port of San Francisco. The credit was given upon the faith of the vessel. The maritime lien of one who furnishes such supplies to a vessel in a foreign port is universally recognized. Heretofore no exception has existed to the rule that requires its enforcement, save in the case of supplies furnished to a vessel belonging to the government. In such a case a principle of public policy which underlies all government intervenes to deny the right of any person to seize the property of the government. But shall another exception be recognized, and shall the fact that the vessel is in charge of a receiver when in her home port exempt her from the rule that otherwise would obtain, and will a court of admiralty, within whose jurisdiction the lien was incurred, and whose jurisdiction is foreign to that of the receiver's court, deny the right of the lienor to proceed in rem against the vessel for the enforcement of his lien? We find no satisfactory ground for so holding. When a receiver, under the order of his court, takes a vessel, the property of his trust, out of the jurisdiction of the court, and sends her into a foreign port under the charge of a master, he places her in the position of all other vessels engaged in like business. It is our judgment that in so doing he subjects her to the same conditions that other vessels are subject to. The master should be accredited with all the powers usually incident to his employment, one of which is the power to pledge the vessel for the supplies or repairs necessary to accomplish her voyage. If he is unsupplied with the funds wherewith to purchase in a foreign port the coals required for the navigation of his vessel, it must be presumed to have been the intention of the receiver, and of the court whose officer he is, to procure such supplies upon the vessel's credit, and to subject her to the usual maritime lien therefor. If such is not the policy of the receiver and of his court, the remedy is to furnish the master with the requisite funds, or to procure the supplies otherwise than upon the credit of the vessel.

To libel the vessel in a foreign port, in the prosecution of a lien so incurred, is not to disturb the possession of the court wherein the receiver was appointed. The actual possession of that court is, as we have seen, coextensive only with the territorial limits of its jurisdiction. Its right to property, through its receiver, beyond that territory, is purely ex gratia of the courts of the foreign jurisdiction in which the property may be located. The observance of the comity which confers that right will yield, as has been shown, to the consideration of the welfare of resident creditors. It is but extending the doctrine to its legitimate conclusion to deny the concession of that comity to the case of a vessel sent forth by a receiver in the business of carrying freight and passengers to and from a foreign port, with no means to procure necessary supplies in the foreign port, and whose master procures the same upon her credit. It would be but indifferent protection to one who should furnish such supplies to refer him to the court of a distant state, a court uninvested with the jurisdic-

tion to enforce a maritime lien, and where his remedy would be uncertain as well as inconvenient. The comity which is the basis of the receiver's protection in a foreign jurisdiction does not extend so far. Nor does the enforcement of the maritime lien so incurred interfere with the orderly administration of the assets which the court has taken under its charge, nor confer upon the libelant a preference to which he is not justly entitled. When a court takes possession of a railroad and steamboat line, and operates the same, the expense of such operation is a first lien upon the income of the property, and, if that be insufficient, it is chargeable upon the corpus of the property. Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950; Myer v. Car Co., 102 U. S. 1; Kneeland v. Machine Works, 140 U. S. 592, 11 Sup. Ct. 857.

It is true that the employés of such receiver, and all who deal directly with him in contracts concerning such expenses, must look to the court whose receiver he is for the allowance and payment of their demands, or for permission to enforce the same; but in the case before the court there was no contract between the libelant and the receiver. It does not appear from the record that the libelant knew, either when he furnished the supplies or filed his libel, that the steamship was in charge of a receiver. He describes her in his libel as a vessel registered and enrolled in the port of New York. The receiver in answering the libel, so far from asserting that the libelant had notice of the receivership, or that provision had been made for paying for the supplies, disclaims under oath all knowledge as to whether such supplies had been furnished at all. It is not disputed that the libelant's claim was due and unpaid for more than 11 months before the libel was filed. If a receiver is to be permitted to take charge of a railroad and steamboat line, and to operate the same under the orders of a court, he should be held to the observance of that honest and fair dealing that should characterize the officer of a court of equity. He ought not to be permitted, as in this case, to incur a large debt in another state, with no provision for the payment thereof. And when the creditor, whose claim is long overdue and unpaid, seeks to enforce payment out of property within his reach, and subject to his claim, the receiver ought not to be allowed to defend upon the ground that the creditor's only recourse is to the court of another state,—the court under whose authority the receiver has incurred the debt, and has failed to pay the same when due.

When reference is had to the reasons out of which the maritime lien for supplies has grown and received universal recognition, it will be seen that those reasons apply with full force to the case of a vessel under the charge of a receiver. Such a vessel, in the course of the business in which she is engaged, may be sent to the ports of distant states, or even to ports in foreign countries. It would be a departure from the principles that have governed admiralty courts to hold that a material man who furnishes supplies to a foreign vessel upon her credit, and at the instance of her master, does so at the risk of being deprived of the security of the usual lien, in case it should appear that the vessel, which so

far as he is able to discern is in the control of a master, sailing the seas and incurring liabilities as other vessels do, is nevertheless, when at her home port, in the possession of a receiver. There should be no such uncertainty concerning the powers of a master. If he is given the authority to make the contract for supplies, it should be held that he has also the power to invest his contract with the incidents that usually attend it. The maritime lien is designed not only for the benefit of material men, but for the advantage of the vessel, which, in contingencies that are liable to arise in navigation, might otherwise be unable to proceed upon her voyage. Said the court in The St. Jago de Cuba, 9 Wheat. 416:

"The vessel must get on. This is the consideration that controls every other; and not only the vessel, but the cargo, sub modo is subjected to this necessity. For these purposes the law maritime attaches the power of pledging or subjecting the vessel to material men to the office of shipmaster, and considers the owner as vesting him with those powers by the mere act of constituting him shipmaster. The necessities of commerce require that when remote from his owner he should be able to subject his owner's property to that liability without which, it is reasonable to suppose, he will not be able to pursue his owner's interests."

The appellant cites the case of Barton v. Barbour, 104 U. S. 126. In that case the court of Virginia had appointed a receiver of a railroad situate within that state. The plaintiff sued the receiver in the District of Columbia on a cause of action based upon the receiver's negligence in operating the railroad in Virginia. There was no appointment of a receiver in the District of Columbia, and none of the property was there. The conclusion of the court is thus expressed:

"The court of another state has no jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action arising in the state in which he was appointed, and in which the property in his possession is situated, based upon his negligence," etc.

In arriving at this conclusion the court was influenced by the consideration that the evident purpose of the suitor, who brought his suit without leave, was to obtain an advantage over other claimants upon the assets in the receiver's hands, and to enforce the same by execution, and thereby take the property from the receiver's possession, without regard to the rights of other creditors, and that the court of the District of Columbia had no jurisdiction to distribute the assets of the corporation, or to protect the rights of all persons entitled to share in the same. This reasoning is not applicable to the facts in the case at bar. The libelant is not here seeking to enforce a cause of action that arose in Oregon, or to obtain a preference to which he is not entitled, or to obtain a personal judgment against the receiver, to be satisfied out of the property in his charge. Nor is his suit capable of preventing the court, which has placed the property in receivership, from administering upon the same with just regard to the rights of all persons. The libelant's claim is by the law maritime a lien upon the vessel. As such, it is entitled to priority of payment, except as to similar liens. In the court of admiralty the holders of all such

liens have an opportunity to appear and present the same. In the meanwhile, if the receiver has occasion to continue to use the vessel in the business of his trust, he may have her released upon stipulation.

The recent cases of Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, and Paxson v. Cunningham (decided by Mr. Justice Gray in the circuit court of appeals of the United States for the First circuit) 11 C. C. A. 111, 63 Fed. 132, cited by both parties to this appeal, have been carefully considered. While those decisions are not directly in point upon the questions in controversy in this case, it is believed that they are not in conflict with the conclusion we have reached. It necessarily follows, from the views we have expressed concerning the lien which the material man acquires in a case like that at bar, that the right to enforce that lien by a proceeding in rem against the vessel, in a court of admiralty of a jurisdiction foreign to that of the court wherein the vessel is held in charge of a receiver, is a matter of right, and is not dependent upon the consent of the latter court. It was not necessary, therefore, that the permission of the Oregon court should have been obtained to the commencement of this suit. The decree is affirmed, with costs to the appellee.