### In re PORTERFIELD.

(District Court, N. D. West Virginia. May 20, 1905.)

1. BANKRUPTCY—LIENS—PROCEEDINGS IN STATE COURTS.

    A deed of trust executed by a bankrupt to his wife was recorded less than four months before the institution of a suit against him in the state court, but more than four months before the institution of bankruptcy proceedings against him, which were instituted within four months after the bringing of the said suit. In that case no attempt was made by the state court to take actual possession of the property conveyed, but all parties interested, including the holder of the legal title to the land conveyed, became parties to the bankruptcy proceedings, proved their debts, and submitted to a sale of the land free from liens, and the fund arising therefrom was paid into the court of bankruptcy for distribution. *Held*, that the petitioning creditors were not entitled to have such fund distributed according to Code W. Va. 1899, c. 74, § 2, declaring that every transfer by an insolvent debtor attempting to prefer any creditor shall be void as to such preference, and that all the property so attempted to be transferred shall be applied and paid pro rata on all debts owed by the debtor at the time of the transfer.

2. SAME—STATE LAWS—CONSTRUCTION—PREFERENCES.

    Code W. Va. 1899, c. 74, § 2, provides that every transfer made by an insolvent attempting to prefer any creditor or to secure such a creditor for a debt to the exclusion or prejudice of any other creditor, shall be void as to such preference or security, but shall be for the benefit of all creditors of the debtor, and the property so attempted to be transferred or charged shall be applied and paid pro rata on all the debts

owed by the debtor at the time such transfer or charge is made, and that a suit to avoid the same shall be in behalf of all creditors "existing" at the time of the transfer, but that its benefit will not be extended to existing creditors unless they agree to contribute to the costs, etc. *Held,* that such act does not provide for the "vacation" of a preference, but secures a preference to a class of creditors, and hence a suit brought to enforce the same within four months of the filing of the bankruptcy petition was void as a proceeding for the imposition of a lien within Bankr. Act July 1, 1898, c. 541, § 67, cl. "f," 30 Stat. 564 [U. S. Comp. St. 1901, p. 3450].

**8.** SAME—BONA FIDE TRANSFERS—DOWER.

Where a bankrupt being indebted to his wife for money loaned agreed by parol to execute a deed of trust to her on certain land to secure the debt, and more than four months before the filing of a bankruptcy petition against him he in fact executed a second deed of trust on the land to her in consideration of her surrendering her contingent right of dower in the land to the extent of $12,500 of its value by signing the first deed of trust on the express condition that her debt should be secured by a second deed, and there was no evidence on which to base a finding as to the value of such dower right, her deed would be sustained as a valid lien to the amount secured thereby.

**4.** SAME—TAXES—PAYMENT—EVIDENCE.

Where a bankrupt was a deputy sheriff, and as such was required to collect all taxes assessed against lands and personal property, etc., and his testimony that the taxes on his own property had been paid by him in money was uncontradicted, and it also appeared that the tax receipts were in the bankrupt's possession, a finding as against the estate of the sheriff that the bankrupt had paid his taxes was justified.

Angus McDonald and Forest W. Brown, for bankrupt and Mrs. Porterfield.

Mason & Mason, D. B. Lucas, and Joseph Trapnell, for creditors.

DAYTON, District Judge. When this case was referred back by my predecessor to Referee James D. Butts for his further consideration, he directed him to file a written opinion, which he has done, and it is as follows:

### Opinion of Referee.

As I understand the facts in this case which are not disputed, Geo. Porterfield was, on the 12th day of November, 1902, the date of his adjudication as a bankrupt, a resident of Charles Town, Jefferson county, West Virginia, and the owner of a farm in Jefferson county, known as "Cassilis." That Eugene Baker was sheriff of said county from January 1, 1897, to January 1, 1900, and that during that period Porterfield was his deputy for Charles Town district, and intrusted with the collection of the taxes for said district. That Porterfield's real and personal property was situated within said district. That on the 11th day of June, 1902, Porterfield conveyed to John Porterfield, trustee, his farm Cassilis, to secure his wife, Susan E. Porterfield, in the payment of a debt due her by note of $4,976.48. Upon the same day he executed a deed of trust on the same farm to secure Milton Rouss in the sum of $12,500 (about which there is no dispute, the only controversy being relative to the deed of trust to secure Susan E. Porterfield). The deed of trust to secure the latter was executed more than four months prior to the adjudication in bankruptcy, and for a valid consideration, which is not disputed. That Porterfield, in consideration of moneys loaned him from time to time by Susan Porterfield prior to June 11, 1902, had repeatedly promised to execute a deed of trust on Cassilis to secure her the payment of the same, and that there was no fraud in the transaction leading up to the execution of the deed of trust of June 11th, 1902. That on August 30, 1902, Eugene Baker instituted a suit in the circuit court of Jefferson county, West Vir-

138 F.—13

ginia, to set aside and avoid said deed of trust of June 11, 1902, upon the ground that the making of the same was a preference under the provisions of section 2, c. 74, of the Code of West Virginia. There are other creditors involved in the controversy, who have filed petitions in the cause, who set up the same contention as made by the representative of Eugene Baker. All of the property, both real and personal, to which the bankrupt was entitled at the date of the adjudication, came into possession of the trustees in bankruptcy, and was by them sold without objection on the part of creditors. The representatives of Baker claimed there was due them from Porterfield the sum of $611.47, taxes due on the farm Cassilis and on his personal property, and that the lien of Susan E. Porterfield created by the deed of trust of June 11, 1902, should not be audited in her favor by the referee. Pleadings were made up on both contentions, testimony taken and submitted, arguments by counsel, and all matters were submitted to the referee, who decided: First. That Porterfield had paid the amount of taxes claimed from him. Second. That the lien in favor of Susan E. Porterfield was a valid one, and as such should be audited in her favor, which was accordingly done.

From this decision of the referee a review was asked and obtained, and at the October term, 1904, of the United States District Court for the Northern District of West Virginia, his honor John J. Jackson, judge of said court, heard the cause, and upon consideration thereof ordered the same to be committed to the referee for such further proceedings as was set out in the order then made, all of which appear in the record of the cause. The referee again heard the cause on the original and amended pleadings and evidence and argument of counsel. The order made in the cause by the honorable District Judge on the 28th day of October, 1904, directed the referee to "report specifically the facts in regard to the payment of the taxes of Porterfield." The cause now presents itself to the referee for decision upon the two points raised by counsel for the creditors: (1) Had Porterfield paid the taxes when the creditors sought to charge him with their payment before the referee? (2) Was the lien created in favor of Susan E. Porterfield by the deed of trust of June 11, 1902, a valid one, which she was entitled to have audited in her favor by the referee?

In answer to the first proposition it seems that it must be answered by the facts as disclosed from the testimony in the cause, and in following the order of the honorable judge of the District Court the "facts specifically" bearing on that point raised must be given prominence. The only testimony in the cause was that of Porterfield, the bankrupt. At page 2 in the summary of his evidence in the record, upon the point of the payment of the taxes in money, the following language will be found: "The tax bills had been taken from the taxbooks of Porterfield, and were in his pocketbook, and in his possession. Did not know just what amount of uncollected tax bills remained in said taxbook. Does not know how much he was indebted to High Sheriff Baker, if anything. Always thought he had sufficient uncollected tax bills, when credited with commissions, etc., to square himself with High Sheriff Baker. Always regarded his individual taxes which he had in his hands for collection paid to High Sheriff Baker. Says he paid them as he did other taxes—just in money. Took from the taxbooks in his possession and custody the tax bills on his individual property from time to time." These extracts from Porterfield's testimony, standing, as it seems, uncontradicted, prove that he paid these taxes in money. He was the deputy sheriff, and the legal custodian of the taxbooks for Charles Town district. His own tax bills, along with others, were in these books, and he had a perfect right to extract them and cancel them in the same way as he would do in other cases. It was insisted in argument that, being largely in arrear with Baker in settling the taxes for Charles Town district, that any moneys that he might have paid to Baker or his agents should have been applied first to the settlement of the shortage. In a settlement with Porterfield, Baker might perhaps require this; but there is no evidence on that point, and it seems immaterial what the relation of debtor and creditor may have been between Porterfield and Baker, if it can be shown that Porterfield paid in money one particular debt it seems he is absolved from further liability for it. He swears that he paid his individual taxes in money, and that he took them from the taxbooks. This evidence seems conclusive of the payment of these taxes in money.

On the second point: It is not denied that the deed of trust of June 11, 1902, in favor of Susan E. Porterfield, was fairly entered into between the parties thereto, and that there was no fraud in its procurement, and that it was executed four months prior to the adjudication of Porterfield as a bankrupt, or that the consideration was valid. It is admitted that it was executed in furtherance of repeated promises on the part of Porterfield to do so to secure the sum of moneys which he had at times prior thereto borrowed from her. But it is insisted by the creditors of Geo. Porterfield that the making of said deed of trust was a preference, which was void under the provisions of section 2 of chapter 74 of the Code of West Virginia of 1899. It was also insisted by counsel for creditors that, inasmuch as the suit on the part of Eugene Baker v. Porterfield et al. had been commenced in the circuit court of Jefferson county to test the questions involved growing out of the making of said deed of trust, that the bankruptcy court should stay further proceedings, and permit the state court to determine all questions affecting said deed of trust. This latter proposition seems entirely without merit. The court of bankruptcy had attained jurisdiction over the property and effects of the bankrupt. His property had passed into the possession of the trustees of the bankruptcy court. It had been sold at public sale by the trustees, without objection on the part of creditors, and there was no other forum in which questions concerning it could be determined, or through the medium of which the funds could be distributed and the estate settled up. The fact that the suit of Baker v. Porterfield et al. having been commenced in the state court prior to the adjudication of Porterfield a bankrupt in no sense affects the jurisdiction of the bankruptcy court, for the law is now well settled that suits in the state courts begun before the adjudication in bankruptcy must be stayed after adjudication, though the property of the bankrupt may be in custody of the state court through a receiver, and that on adjudication the state court must order its receiver to turn over the property of the bankrupt held by him to the trustees in bankruptcy. See Hanson v. Stephens et al. (Ga.) 42 S. E. 1028. All questions relating to the estate of the bankrupt must be determined in a court of bankruptcy. In re Mertens, 12 Am. Bankr. R. 709, 131 Fed. 515. "An action concerning the same will not be permitted to proceed further in the state courts." See Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Bank v. Sherman, 101 U. S. 407, 25 L. Ed. 866. "A referee in bankruptcy has jurisdiction in the first instance to determine the questions of the validity of the claim of a third party to a lien upon or an interest in property or the proceeds of property lawfully in the custody of the trustee in bankruptcy." In re Rochford, 124 Fed. 182, 59 C. C. A. 388; In re Cobb (D. C.) 96 Fed. 821. At page 823, Judge Purnell uses this language: "After the adjudication in bankruptcy the bankrupt court takes jurisdiction of the estate and all matters pertaining thereto, and will administer the same to a final settlement. Parties having or claiming an interest in the bankrupt estate must submit them to the bankruptcy court. No other court, and no person acting under process, can, without permission of the bankruptcy court, interfere with it; and to do so is a contempt." Counsel for creditors cited and urged in support of their contention that the state court should be permitted to proceed with the cause the cases of Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, and Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128; but an examination of these cases will show that proceedings therein had been commenced in the state courts many years prior to the passage of the bankrupt law of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), and that the property and funds had been reduced to possession and were in the custody of the state court, and, as the cases had proceeded so far, the bankruptcy court, on the ground of comity, should not interfere; but no case can be presented sustaining that position where the facts arose and the suit was instituted in the state court since the passage of the bankruptcy act of 1898 and the amendments thereto. The most recent decision of the Supreme Court of the United States is In re Watts and Sacks, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933. In that case, at page 27, 190 U. S., page 724, 23 Sup. Ct., 47 L. Ed. 933, Chief Justice Fuller says: "The bankruptcy laws are paramount, and the jurisdiction of the federal court in bankruptcy, when properly involved in the administration of the affairs of insolvent persons and corpo-

rations, is essentially exclusive." It seems, therefore, that the contention of counsel for the creditors that the state court should have been permitted to proceed to determine the questions involved growing out of the execution of the deed of trust of June 11, 1902, and to administer so much of the funds of the bankrupt's estate as was covered by that deed of trust, is not sustained by authority.

As to the validity of the lien in favor of Susan E. Porterfield, created by deed of trust of June 11, 1902. It is not denied that this lien was given for a fair, valuable, and adequate consideration, and no attempt is made to avoid it under any provision of the bankruptcy law bearing on the subject; but it is earnestly insisted that the fact of its execution made it a preference under section 2 of chapter 74 of the Code of West Virginia of 1899, and the court of bankruptcy should so hold. This statute seems to contemplate the securing of a certain class of creditors, the securing of which to the exclusion of others works a preference. But they must be in the same class, and it will hardly be contended with hope of success that one who held a valid lien either in law or equity on the property of the debtor at the time of the execution of a conveyance could be said to be in the class mentioned in the statute. A general creditor could be affected, but not a lien creditor. In this cause the question arises, did Susan E. Porterfield hold a legal or equitable lien on the farm of Geo. Porterfield at the time of the execution of the deed of trust of June 11, 1902? Her counsel insist that at that date she held an equitable lien as effective as though it had been executed and duly recorded prior to that date, based on the agreement made between her and Geo. Porterfield growing out of the loans of moneys made to him, and that the final execution of the deed of June 11, 1902, was but a mere carrying out of that to which she in equity was entitled long before its execution. There is no evidence in the record tending to show that any agreement in writing to give this lien was ever made between the parties, and all the evidence tends to show that it was a parol agreement fully and fairly executed on the part of Susan E. Porterfield and promised to be executed on the part of Geo. Porterfield at times when she loaned him the money. The evidence shows that she parted with her money on the faith of and in consideration of his promises, and at a time when he was solvent. Did these facts constitute an equitable lien in favor of Susan E. Porterfield on the farm known as Cassilis prior to June 11, 1902?

Courts of equity look with favor on liens of this character, though created by parol agreement, upon the principle of considering "that done which should have been done." 1 Jones on Mortgages, pp. 156 and 763; Snyder v. Martin, 17 W. Va. 276, 41 Am. Rep. 670; Fidelity Co. v. Shenandoah Valley R. Co., 33 W. Va. 762, 11 S. E. 58; Flagg v. Mann, 2 Sumn. 486, Fed. Cas. No. 4,847; Ketchum v. St. Louis, 101 U. S. 306, 307, 25 L. Ed. 999. In Burdick v. Jackson, 7 Hun, 489 (N. Y. Sup. Ct.), the court held that: "A parol agreement in respect to lands cannot be avoided in equity because it is not in writing, when there has been a part performance of it. An assignee in bankruptcy stands in the shoes of the bankrupt, and takes the transfer of the bankrupt's estate subject to the lien on it; and a mortgage given by a bankrupt 18 days before the filing of the petition, if given pursuant to a parol agreement so to do 15 months before, and based upon a good consideration, is not a fraudulent preference which will be adjudged void under the provisions of the bankrupt act." "An agreement based upon a valuable consideration to give a mortgage will be treated in equity as a mortgage." See Dean v. Anderson, 34 N. J. Eq. 496, wherein the whole subject is discussed at great length and with great learning. Courts of bankruptcy are courts of equity, and will administer rights and remedies in accordance with the general principles of equity which prevail in and have been adopted by the United States Circuit Courts, and though state courts and state statutes may hold to the contrary. The federal courts, in administering the bankrupt laws, will follow the general principle of equity in determining rights and remedies. This matter is thoroughly discussed and decided in James v. Gray, 131 Fed. 401, 65 C. C. A. 385. Under this decision, if Susan E. Porterfield had a valid equitable lien on the 11th day of June, 1902, she was entitled to enforce it in the bankruptcy court when she invoked relief therein, the statutes of the state of West Virginia and the state decisions thereunder to the contrary.

But, aside from this, the evidence in this cause and the decisions supra show that on the 11th day of June, 1902, when the deed of trust was executed, that she held a valid equitable lien on the farm Cassilis, owned by Geo. Porterfield, and that her debt secured thereby was not of the class that the giving of said deed of trust would affect, and thus bring her within the prohibition of section 2, c. 74, of the Code of West Virginia of 1899, and thus create a preference, and an avoidance of the lien in her favor. She was clearly entitled to have the lien audited in her favor, and it is so ordered.

In affirming the conclusions arrived at by the referee, I desire briefly to set forth some of the reasons that have actuated me in so doing.

1. It is to be noted that the deed of trust in favor of Mrs. Porterfield was recorded less than four months before the institution of Baker suit in circuit court of Jefferson county, but more than four months before the institution of the bankruptcy proceeding against her husband. It will be noted, also, that the bankruptcy proceeding was instituted within four months after the institution of Baker's suit in the state court, and that in the latter case no attempt was made by the state court to take actual possession of the property involved by the appointment of a receiver or otherwise. On the contrary, it appears that all parties interested, including Baker's representative and Rouss, who held the legal title to the land through his trustee for the security, undisputed, of his debt of $12,-500, have come into the bankruptcy case, proved their debts, and submitted to a sale made therein under order of the referee, whereby the farm was sold free and acquit from all liens, and the fund arising therefrom is now entirely under the control and awaiting the distribution of the bankrupt court. Under these circumstances I hold that the petitioning creditors, independent of the exclusive character of the bankruptcy jurisdiction, cannot now rely upon the pendency of the case in the state court to give them the relief asked, to wit, the distribution of the funds according to the requirements of section 2, c. 74, of the Code of West Virginia of 1899; and this for two reasons: (a) Because the state court never took possession of the property; and (b) because the parties have, in effect, waived any rights they might have had in this particular, and have submitted to the federal court's jurisdiction. I base this holding upon the principles laid down in such cases as Southern Loan & Trust Co. v. Benbow (D. C.) 96 Fed. 514; Frazier v. Southern L. & T. Co., 99 Fed. 707, 40 C. C. A. 76; Hagan v. Lucas, 10 Pet. 401, 9 L. Ed. 470; Taylor v. Carryl, 20 How. 583, 15 L. Ed. 1028; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Bank v. Calhoun, 102 U. S. 256, 26 L. Ed. 101; In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689; Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867; Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981; Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660; In re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933; In re Tune (D. C.) 115 Fed. 906; Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 334, and exhaustive note thereto of Mr. Black; s. c., 76 Fed. 296; East Tenn. V. & G. R. Co. v. Atlanta & F. R. Co. (C. C.) 49 Fed. 608, 15 L. R. A. 109; The Willamette Valley, 66 Fed. 565, 13 C. C. A. 635. The jurisdiction of the bankrupt court

is exclusive, at least when fully and rightfully obtained over the property itself, as held in such cases as In re Watts, supra; and all state laws for the administration of insolvent estates, and all actions and proceedings under such laws, under such circumstances, are suspended, as held by such cases as In re Smith (D. C.) 92 Fed. 135; Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565, 29 L. Ed. 855; In re Bruss-Ritter Co. (D. C.) 90 Fed. 651; Lea v. West Co. (D. C.) 91 Fed. 237. It would therefore be plainly impossible to direct in this case a distribution of the funds in accordance with the directions of the suspended state laws instead of in accordance with the clear mandatory provisions of the bankrupt act, which will not suffer Mrs. Porterfield's preference to be now assailed because recorded more than four months prior to the filing of the petition in bankruptcy.

2. The bankrupt act in express terms sets aside all preferences given within four months of the filing of the petition. It goes further, and excludes participation by creditors who have within that period received preferences by conveyance, transfer, assignment, or incumbrance, except such preference be surrendered. It also provides that all levies, judgments, attachments, or other liens obtained through legal proceedings against an insolvent within four months prior to the filing of the petition in bankruptcy shall be void. On the other hand, section 2, c. 74, of the West Virginia Code of 1899, under which Baker's suit in the state court was brought, is somewhat contradictory in its terms. It reads in part:

"Every transfer or charge made by an insolvent debtor attempting to prefer any creditor of such insolvent debtor or to secure such a creditor or any surety or indorser for a debt to the exclusion or prejudice of any other creditor, shall be void as to such preference or security, but shall be taken to be for the benefit of all creditors of such debtor, and all the property so attempted to be transferred or charged shall be applied and paid pro rata upon all the debts owed by such debtor at the time such transfer or charge is made."

It then limits this provision by requiring suit to be brought within a year, or, if such transfer or charge be admitted to record within eight months after its execution, then said suit must be brought within four months of such recordation. Such suit is to be deemed brought in behalf of all creditors existing at the time of the transfer, but its benefit will not be extended to existing creditors unless they come in and agree to contribute to costs; but those who do so come in are to share pro rata with the creditor who had the transfer or charge made in his favor, to the exclusion of subsequent creditors and existing creditors who do not join in the suit. The question at once arises whether this statute should be construed as one setting aside preferences or giving preferences. It does not in fact set aside the original preference given the creditor by the transfer or charge; on the contrary, by reason of the preference having been given him by the act of the debtor, this proceeds to give certain other creditors a like preference as against all others. It may be fairly construed as a statute giving class preference. See Feely v. Bryan (W. Va.) 47 S. E. 307, where Brannon, J., holds the filing

of a claim before a commissioner is a sufficient joinder in the suit, but the demand must have existed at the time of the transfer. If this construction be the correct one to be given to this statute—and we believe it to be so—then the suit instituted by Baker in the state court was one brought to secure a preference for himself and others belonging to a class, as against other creditors, and, having been instituted within four months of the filing of the petition in bankruptcy, must be held a void proceeding, as having given by its institution a lien, under clause "f" of section 67 of the bankrupt act (30 Stat. 564 [U. S. Comp. St. 1901, p. 3450]).

3. Both the state and bankrupt act recognize the right to make a transfer giving preference for a new, and not an existing consideration or debt, if made in good faith. In this case it cannot be denied that Mrs. Porterfield gave a new and valid consideration, but did so in consideration of the securing of an existing debt. She surrendered her contingent right of dower in and to her husband's farm to the extent of $12,500 of its value by signing the Rouss trust deed upon the express condition that her debt should be secured by a second trust deed. This consideration for a conveyance on her part has been held to be valid in law, and in its nature unassailable for fraud so far as given for equivalent to dower, because it is the surrender of an absolute right guarantied to her expressly by the law. Glascock v. Brandon, 35 W. Va. 84, 12 S. E. 1102; Blanton v. Taylor, Gilmer, 209; Harvey v. Alexander, 1 Rand. 219, 10 Am. Dec. 519; Taylor v. Moore, 2 Rand. 563; Wm. & Mary College v. Powell, 12 Grat. 372. Under both the state and the bankrupt act would not Mrs. Porterfield's preference be upheld to the extent of the value of this new consideration? In such event, under the state act she would be entitled to preference under her deed to the value of her contingent dower, and then, admittedly, she would be further entitled to her pro rata share with the other existing creditors for the balance of her debt. Glascock v. Brandon distinctly holds that the court, by reason of the difficulties inherent in the circumstances, will enter into no nice or exact calculations in estimating the value of this contingent right of dower. In this case, as in that one, we are left wholly in the dark as to what this interest was worth at the time; nor are we given any information as to what was the value of the preference secured by her for it. This would depend upon the amount of debts existing at the time that would have joined in Baker's suit and secured a pro rata distribution with her. She might, by this prorating, have lost from $1 to over $4,000; nobody knows how much or how little. The record is silent as to this. Again, nothing is told us as to Porterfield's health, habits, and reasonable expectancy of life; nothing of Mrs. Porterfield's either. On the other hand, we do know that Porterfield secured $12,500 in cash out of the farm, out of which, if he should die to-morrow, Mrs. Porterfield would lose to the extent of $2,651.13, for her age is given, and the calculation on a present basis is easily made. Who has given us any information in this record by which we can form any estimate as to whether this dower right, contingent now, possibly liable to become vested

to-morrow, would be less, equal, or more than the value of this preference given in consideration of its surrender? It seems to us peculiarly a case where we ought to follow Glascock v. Brandon, and enter into no speculative calculations, but, as in that case, solve the doubt in favor of the wife, who has parted with a right of value, and which cannot be restored to her except by a compensation necessarily uncertain and problematical. Therefore, if I had to follow in this case the state law—which I hold I do not—I would under it uphold this preference to Mrs. Porterfield.

4. As to the claim for taxes it may be said, in addition to what Referee Butts has said, that both Baker and Porterfield were officers of the law, acting as such under oath, and subject to its requirements and penalties touching the matter of the collection of these taxes; the one being sheriff, the other his deputy. Their duties were clear and explicit. The law commanded them each year on and after August 1st to collect all taxes assessed against lands and personal property; to distrain for such after November 1st if property of the owner could be found; if not, within a certain period to return the lands delinquent, and, under distinct provisions set forth, sell the same for such taxes. It was the primary duty of Baker, as sheriff, to see that these legal provisions were strictly carried out both by himself and by his deputies. He could make no exceptions. Porterfield's taxes were required to be collected or returned in precisely the same way as every other taxpayer's—every year—unless paid. He has testified he did pay them, though the testimony may not be clear that such payments were made as separate and distinct ones, instead of in connection with others for taxes collected by him. There is no other evidence. It seems to me that, even without his testimony, in the absence of the tax receipts from Baker's custody and their presence in Porterfield's custody, we must assume and conclude that Baker had suffered and agreed to their being regarded as paid and satisfied by Porterfield either by direct and distinct payment as a single transaction each year or by the general payments made in regard thereto and other taxes collected by him from time to time. That such general payments were made is not disputed. For us to hold that these taxes were not paid to Baker, and were not regarded and understood as so paid, would be to hold in his interest, or that of his estate, he being now dead, that for the full four years of his official term he distinctly and knowingly violated the law and his oath of office by not collecting them. This I am not prepared to assume in the absence of any proof whatever to that effect, and in the face of Porterfield's direct testimony to the contrary.