## FARNSWORTH v. UNION TRUST & DEPOSIT CO.

### In re R. M. SMITH & CO.

(Circuit Court of Appeals, Fourth Circuit. March 7, 1921.)

No. 1852.

Bankruptcy ⬡═353—Preferential payments made by state receiver should be equalized in bankruptcy proceeding.

The payment of a dividend, by the receiver of a state court appointed for an insolvent partnership in a suit by one partner for dissolution, to such creditors as presented their claims within four months prior to bankruptcy of the partnership, *held* to operate as a voidable preference, as against other creditors, who were without notice and did not participate, and to entitle them, on proving their claims in bankruptcy, to payment of an equal percentage thereon before further dividends were paid; for the primary purpose of the bankruptcy act is to give to all unsecured creditors the same percentage of their claims, and a court of bankruptcy should administer it broadly as a court of equity to that end.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Parkersburg, in Bankruptcy; Alston G. Dayton, Judge.

In the matter of R. M. Smith & Co., bankrupt; the Union Trust & Deposit Company, trustee. John W. Farnsworth, special receiver of the Smith-Chapman Lumber Company, appeals from an order of the District Court. Reversed.

See, also, 211 Fed. 912, 128 C. C. A. 290.

Philip P. Steptoe, of Clarksburg, W. Va. (Louis A. Johnson, of Clarksburg, W. Va., and Linn Brannon, of Weston, W. Va., on the brief), for appellant.

Mason G. Ambler, of Parkersburg, W. Va. (Van Winkle & Ambler, of Parkersburg, W. Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. The partnership of R. M. Smith & Co., was composed of Robert M. Smith and his brother, John H. P. Smith. In January, 1908, the former brought suit against the latter, in the circuit court of Wood county, W. Va., for a dissolution of the partnership and the distribution of its assets among the creditors, on the ground that it was in such financial straits as not to be able to continue in business. A receiver was thereupon appointed, who took possession of the firm's property, and later the matter was referred to a commissioner to ascertain the indebtedness. In March, 1909, the commissioner reported a list of creditors numbering 388, with the amounts owing to them severally, aggregating $438,901.81, and on the 26th of that month the receiver was directed to pay to those creditors a dividend of 12½ per cent. The commissioner stated that this was a partial report, made for the purpose of allowing a partial distribution, and the order of confirmation recommitted it to him "to hear evidence

in proof of any question in relation to any of the claims reported in the list filed with his report or any other claim." Some 2½ months afterwards, on July 10, the partnership of R. M. Smith & Co. and its members individually were adjudged bankrupt on their own petition. It does not clearly appear whether the receiver had in the meantime paid the 12½ per cent. to the creditors reported by the commissioner in March, and appellant denies that he had; but for present purposes it may be assumed that at least most of them received this dividend prior to the adjudication.

The claim of appellant, Farnsworth, arose in this way: The bankrupt firm, or its members, owned a controlling interest in the Smith-Chapman Lumber Company, a corporation carrying on business in Braxton county, W. Va. The failure of the partnership involved the failure of the corporation, and in August, 1909, its creditors brought suit in the circuit court of Braxton county for dissolution and the winding up of its affairs. In that suit Farnsworth was appointed receiver, after several others had declined to serve, in March, 1910. As it appeared that R. M. Smith & Co. were largely indebted to the corporation on their subscription to its capital stock, the receiver was directed to take appropriate action for the recovery of the unpaid balance. Accordingly, on April 19, 1910, he filed a proof of claim in the bankruptcy proceeding for $22,500. Objection to its allowance was made by the trustee, appellee here, and a long litigation followed, including an appeal to this court, which in February, 1914, reversed the court below and directed that the claim be allowed for $16,923.75. 211 Fed. 912, 128 C. C. A. 290.

On the amount so allowed a dividend was presently paid of 15 per cent., equaling the aggregate of two dividends previously paid by the trustee to unsecured creditors. It was then proposed to distribute the remaining funds in hand pro rata among all the creditors as a final dividend; but appellant called attention to the fact that other creditors had received 12½ per cent. of their claims under order of the state court shortly before the bankruptcy, as above recited, in which his claim had not shared, and asked that first he be paid such sum as would put him and them on the same footing. This request was declined by the trustee, and thereupon, on April 30, 1914, appellant filed a "supplemental petition and proof of claim," setting up the facts in detail, alleging that the other creditors had obtained an illegal preference by the payment to them of the 12½ per cent., and praying in substance that they be required to return the same or that he be allowed an amount which would equalize what they had thus received. The trustee's motion to dismiss this petition was sustained by the referee in a lengthy opinion, on the sole ground—every other element of a voidable preference concededly existing—that the creditors to whom payment of 12½ per cent. was ordered by the state court did not "have reasonable cause to believe" that such payment "would have the effect of giving them a preference" over other creditors. This ruling was affirmed by the District Court, and Farnsworth appeals.

We are constrained to a different conclusion. The dividend in question, though paid by order of the court then having jurisdiction, was

practically a transfer of property by R. M. Smith & Co. within four months of their bankruptcy. The suit in the state court was by one member of the firm against the other, and the receiver was appointed at their instance. The notice given by the commissioner, to whom it was referred "to take proof and report to the court the names of and amounts due the several creditors," was directed only to the parties to the suit, and the list reported by him appears to have been made up, at least in large part, from the books of the firm. There was no adjudication as to what persons were creditors, or of the amounts owing to them, respectively. Indeed, as already stated, the report was a partial one, made for a special purpose, and the order based thereon provided expressly for creditors whose claims had not been proven. Moreover, at that time, more than a year after the appointment of a receiver, all the creditors were aware that the partnership was hopelessly insolvent, and they took their dividend with that understanding.

In these circumstances it seems obvious that every creditor receiving the 12½ per cent., not only had reasonable cause to believe, but in the nature of the case must have known, that he was thereby getting a preference over other creditors who did not share in that distribution, and it does not matter whether or not he knew that there were such creditors. In short, it appears that the bankrupts, R. M. Smith & Co., (1) while insolvent, (2) within four months prior to the adjudication in bankruptcy, (3) in a suit in the state court which they instituted and controlled, (4) procured payment to the other creditors of a dividend of 12½ per cent. out of the partnership assets then in the hands of the receiver, and (5) that the necessary result of such payment was to give to them a percentage of their respective claims which appellant has not received on the claim subsequently established by him. Thus all the elements of a voidable preference are present, and the transaction must be regarded as of that character. The facts are somewhat novel, it is true; but the question presented seems to us not doubtful, either as a matter of first impressions or as viewed in the light of decisions in analogous cases. Wilson v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147; Bradley Timber Co. v. White, 121 Fed. 779, 58 C. C. A. 55; In re English, 127 Fed. 940, 62 C. C. A. 572; In re Porterfield (D. C.) 138 Fed. 192; English v. Ross (D. C.) 140 Fed. 630.

Even if it be granted that the payment in question is not, strictly speaking, within the statutory definition of a voidable preference, it by no means follows that creditors who received that payment should be allowed to retain it, and also have in addition the same percentage in bankruptcy as appellant or any other creditor to whom the 12½ per cent. was not paid. On the contrary, we perceive no reason for refusing to put him, and others in like situation, if there be such, upon an equality with those to whom the state court ordered a partial distribution. The primary purpose of the Bankruptcy Act, as of the insolvency laws of the state, is to give to all unsecured creditors the same percentage of their claims, and that purpose is manifestly defeated by the decree under review. If the partnership affairs had been wholly wound up in the state suit, the claim of appellant would have received its pro rata share,

for the state law so requires; and the same result would have followed if that suit had not been brought, but bankruptcy resorted to in the first place. This being so, we cannot believe that a different result should be permitted merely because the administration of this insolvent estate begun, but not completed, in the state court, was transferred to another jurisdiction by the paramount authority of the Bankruptcy Act.

On the facts of record, which carry their own comment, it must be held that appellant is entitled to be placed on an equality with creditors who received the 12½ per cent.; and it is therefore the duty of the bankruptcy court, as a court of equity, to direct such payment to him from the funds now held by the trustee, and which are understood to be ample for that purpose, as will equalize the 12½ per cent. paid to them, the remainder to be divided pro rata among all the creditors. It appears, however, that those who received the 12½ per cent. credited it on their respective claims, and proved in bankruptcy, if they proved at all, only for the balance. It results that the payments afterwards made to them by the trustee were not 15 per cent. of their original claims, but of only seven-eighths thereof, whereas appellant has had 15 per cent. of the full amount allowed him, and this should be taken into account in equalizing the further dividends. In other words, the funds in hand should be so distributed as to give to the creditors who got the 12½ per cent., and proved the balance in bankruptcy, the same aggregate percentage of their original claims as appellant gets in the aggregate on his claim of $16,923.75.

The pleas of laches and res adjudicata set up by appellee are without merit. In the suit to dissolve the partnership there was no disclosure of indebtedness to the Smith-Chapman Lumber Company for unpaid subscription to its capital stock, and that claim did not arise until Farnsworth was appointed receiver of the corporation. Within a month thereafter he filed proof of claim in the bankruptcy proceeding, and the records of this court show that he prosecuted the same with reasonable diligence; and until that claim was established, in 1914, he was plainly without standing either to assert that the 12½ per cent. dividend was a voidable preference or to demand equalization with those who received it. The former appeal involved only the validity and amount of the claim; there was no adjudication, and could be none, of the matters now in dispute.

The decree will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.